UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TARA D. BROWN,

              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

DECISION & ORDER

17-CV-1107P

## PRELIMINARY STATEMENT

Plaintiff Tara D. Brown ("Brown") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 8).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket # 10, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## DISCUSSION

**I.**      **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the

3

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II. **Analysis**

Brown's sole contention is that the Appeals Council failed to properly consider and weigh an updated mental RFC questionnaire completed by Brown's treating psychiatrist, Dr. Napoli. (Docket # 10-1, 13). Specifically, Brown argues that the Appeals Council's rejection of Dr. Napoli's opinion without sufficient explanation violated the treating physical rule.

"The Appeals Council must consider additional evidence that a claimant submits if the claimant can show good cause for not submitting it to the ALJ, it is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the decision." *Redic v. Comm'r of Soc Sec.*, 2019 WL 1512556, *3 (W.D.N.Y. 2019) (citing, *inter alia*, 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b)).[1] "Evidence is 'new' when it has not been considered previously in the administrative process," *Pferrer-Tuttle v. Colvin*, 2015 WL 5773524, *5 (W.D.N.Y. 2015), and when it is "not cumulative of what is already in the record," *Pennetta v. Comm'r of Soc. Sec.*, 2019 WL 156263, *3 (W.D.N.Y. 2019). Evidence is "material" when it is "relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Id.* (citing *Webb v. Apfel*, 2000 WL 1269733, *14 (W.D.N.Y.), *report and recommendation adopted by*, 2000 WL 1209385 (W.D.N.Y. 2000)); *accord Pollard v.*

---

[1] The good cause requirement became effective on May 1, 2017. (Tr. 31). As Brown indicates (Docket # 10-1 at 13), because her claim was pending before the Appeals Council prior to this requirement, the Appeals Council "f[ound] that [Brown] showed good cause for not submitting additional evidence earlier." (Tr. 32).

4

*Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("[n]ew evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative'[;] . . . [t]he concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently") (brackets and citation omitted). "If the Appeals Council fails to consider new, material evidence, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Davidson v. Colvin*, 2013 WL 5278670, *7 (N.D.N.Y. 2013) (quotations omitted).

In this matter, the ALJ considered a "Psychiatric Medical Report" prepared by Dr. Napoli, dated January 26, 2016. (Tr. 21). In that report, Dr. Napoli indicated that he had been treating Brown for approximately five months, that Brown suffered from major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and that she had a history of suicide attempts, violence towards others, and psychiatric hospitalizations. (Tr. 625). He also noted that Brown had done well while on medication, but without medication, "she report[ed] depression and irritability." (*Id.*). Dr. Napoli's mental status exam of Brown revealed, among other things, that she had limited insight and poor judgment at times. (Tr. 626). Dr. Napoli indicated that "[i]n the past, [Brown] ha[d] stopped taking medication because she did [not] think she needed it." (*Id.*). Dr. Napoli also opined that these impairments had lasted or could be expected to last twelve months or longer, but that he was unable to assess Brown's ability to engage in sustained work activity. (Tr. 628).

The ALJ gave "great weight" to Dr. Napoli's opinion "that [Brown] d[id] well on her medications and relate[d] appropriately with others," even though the opinion "d[id] not provide a great deal of detail." (Tr. 21). The ALJ reasoned that Dr. Napoli's "treating

5

relationship with [Brown] gave him the opportunity to observe and evaluate [Brown's] functioning over a substantial period of time," which allowed him to observe that Brown "had mostly normal functioning and had good control on her medications." (*Id.*). The ALJ also noted that her RFC determination was "more limited than Dr. Napoli's opinion suggest[ed] in order to reflect [Brown's] capacity on a sustained bas[is]" because Dr. Napoli "had been treating [Brown] for only five or six months at the time he prepared his statement." (*Id.*).

After the ALJ's decision on April 22, 2016, but before the Appeals Council denied Brown's request for review of that decision on September 6, 2017, Brown submitted several pieces of additional evidence, including a follow-up mental RFC questionnaire completed by Dr. Napoli, dated June 30, 2016. (Tr. 2, 47-48). The purpose of the follow-up opinion was to "clarify [Dr. Napoli's] previous opinion," specifically with regard to his statements that "there were times where [Brown] did not take her medication." (Tr. 47).

Dr. Napoli agreed with the ALJ's characterization of his January 2016 opinion that Brown functioned well when she took her medication. (*Id.*). Dr. Napoli opined that Brown's refusal to take her medication was "likely" a symptom of her mental illness, explaining that Brown "starts to feel better and stops medication [which is] consistent w[ith] [an] individual with bipolar disorder." (*Id.*). He further opined that during the ten-month period during which he had treated Brown, she had remained compliant with her treatment only fifty percent of the time. (*Id.*). Dr. Napoli also opined that Brown would likely be even more non-compliant with recommended treatment if she "were exposed to the stress of full-time work," reasoning that Brown had started to miss more appointments when she was working part-time. (*Id.*). Finally, Dr. Napoli opined that Brown would "unlikely" be able to "cope with the stress inherent in any work situation during periods in which she was non-compliant with medications." (Tr. 48).

6

These opinions regarding Brown's treatment noncompliance and the affect of that noncompliance on Brown's ability to work were not included in Dr. Napoli's earlier January 2016 opinion.

The Appeals Council concluded that the additional evidence did not "provide a basis for changing the [ALJ's] decision." (Tr. 1). Specifically, regarding Dr. Napoli's June 2016 opinion, the Appeals Council indicated that the evidence did "not show a reasonable probability that it would change the outcome of the decision" and, therefore, it "did not consider and exhibit this evidence." (Tr. 2).

As an initial matter, Brown is correct that the treating physician rule applies when the Appeals Council considers new and material evidence from a claimant's treating physician. *See Beck v. Colvin*, 2013 WL 5533571, *8 (W.D.N.Y. 2013) ("[w]hen reviewing the record, the Appeals Council must follow the same rules as must an ALJ for considering opinion evidence"); *see also Asturias v. Colvin*, 2014 WL 3110028, *6 (W.D.N.Y. 2014) ("[t]hus, where the claimant has submitted a treating physician's opinion on the nature and severity of the claimant's impairments during the relevant period of disability to the Appeals Council for consideration on review of the ALJ's hearing decision, the treating physician rule applies, and the Appeals council must give good reasons for the weight accorded to that opinion") (internal quotation omitted); *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) ("[i]mportantly, the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician"). However, "[b]efore determining whether or not the Appeals Council properly applied the treating physician rule to the additional evidence, the [c]ourt must determine whether or not the evidence is new, material and related to the period on or before the date of the ALJ's decision." *Overbaugh v. Astrue*, 2010 WL 1171203, *12

7

(N.D.N.Y. 2010). "Thus, it is not necessary for the [c]ourt to engage in an analysis of the substance of the additional evidence or the applicability of the treating physician rule unless or until the [c]ourt determines that the Appeals Council was required to consider the additional evidence." *Id.*

Upon review of the additional evidence, I find that the Appeals Council erred by not considering Dr. Napoli's June 2016 opinion. No question exists that the opinion qualifies as "new," as it did not exist prior to the ALJ's April 2016 decision and contained information not previously provided by Dr. Napoli. Moreover, the opinion relates to the period at issue because its explicit purpose was to "clarify [Dr. Napoli's] previous opinion," which he rendered prior to the ALJ's decision.

I disagree with the Commissioner's contention that Dr. Napoli's June 2016 opinion was not material. (Docket # 12 at 13-15). The ALJ emphasized that Brown functioned well when she took her medication and complied with mental health treatment. (Tr. 22-23). Dr. Napoli's supplemental report, however, indicates that Brown has remained compliant with treatment only fifty percent of the time likely due to her bipolar disorder. (Tr. 47 (explaining that Brown's refusal to take medication is likely a symptom of her mental illness; "Ms. Brown starts to feel better and stops medication [which is] consistent w[ith] [an] individual with bipolar disorder")). Dr. Napoli also opined that the stress of full-time work would likely cause more non-compliant behavior by Brown. Dr. Napoli further opined that Brown would likely not be "able to cope with the stress in *any work situation*" during her periods of non-compliance. This opinion appears to conflict with the ALJ's RFC determination limiting Brown to work in a "low-stress environment." *See Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) ("[b]ecause stress is highly individualized, mentally impaired individuals may have

8

difficulty meeting the requirements of even so-called low-stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect [her] ability to work") (internal quotation omitted); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("[a]lthough a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments"). For these reasons, I find that Dr. Napoli's opinion is material and presents a reasonable probability of changing the ALJ's RFC determination.

Moreover, the Appeals Council's cursory explanation for rejecting Dr. Napoli's June 2016 opinion does not provide "good reasons" as required by the treating physician rule. The parties do not dispute that Dr. Napoli was Brown's treating psychiatrist and qualified as a treating source. Indeed, the ALJ recognized that Dr. Napoli had a "treating relationship" with Brown "over a substantial period of time" and purported to give "good reasons" for not giving Dr. Napoli's January 2016 medical opinion controlling weight. (*See* Tr. 21 (assessing opinion based on length of treating relationship and its consistency with treatment records)). It is also evident that the Appeals Council gave little, if any, weight to Dr. Napoli's opinion because it concluded that the opinion would not affect the ALJ's decision. *See Stadler v. Barnhart*, 464 F. Supp. 2d at 188 ("[s]ince the Appeals Council concluded that nothing in [treating psychiatrist's] report warranted reversal of the ALJ's decision, it must therefore have given little or no weight to his opinion that plaintiff had difficulty responding appropriately to supervision").

The Appeals Council was obligated to explain and provide "good reasons" for failing to give controlling weight to Dr. Napoli's June 2016 medical opinion – which, for the reasons discussed above, appears to conflict with the ALJ's RFC determination. Remand is warranted on this basis. *See*, *e.g.*, *Czolowski v. Comm'r of Soc. Sec.*, 2015 WL 1310347, *4

(N.D.N.Y. 2015) (remanding where Appeals Council disregarded opinions of treating physicians without explanation; "[h]ere, it is not clear why the Appeals Council discounted the opinions of [treating physicians][;] . . . [t]he Appeals Council simply stated that all of the newly submitted evidence did not show a reasonable probability of changing the outcome of the decision"); *La Torre v. Colvin*, 2015 WL 321881, *13 (S.D.N.Y. 2015) ("[t]he treating physician rule applies to the Appeals Council[;] . . . the Appeals Council was required to evaluate [the new opinions from treating physicians] according to the applicable regulations and give reason for its determination not to credit the favorable reports") (collecting cases); *Asturias v. Colvin*, 2014 WL 3110028 at *6 ("the Appeals Council's decision merely stated it found that the newly submitted information does not provide a basis for changing the [ALJ's] decision[;] . . . [t]he Appeals Council therefore not only failed to provide 'good reasons' for disregarding the treating physician's opinion, it did not provide any reasons at all") (internal quotation omitted); *Beck v. Colvin*, 2013 WL 5533571 at *8 ("[b]oth [doctors] clearly qualified as treating physicians, and the Appeals Council was obligated to give specific reasons why their statements were rejected in its denial of review[;] [t]he Appeals Council's failure to do so was plainly erroneous"); *Davidson v. Colvin*, 2013 WL 5278670 at *9 (remand warranted where "the Appeals Council not only failed to provide 'good reasons' for disregarding the treating physician[]'s opinion, it did not provide any reasons at all[,] . . . [and] there is a reasonable possibility that [the ALJ] would have reached a different result if the original administrative record had included [the doctor's] assessment"); *James v. Comm'r of Soc. Sec.*, 2009 WL 2496485, *11, 12 (E.D.N.Y. 2009) (remanding where Appeals Council failed to provide a "detailed written explanation of what weight, if any, it accorded to the new evidence provided by plaintiff's treating physicians"; "[w]hile some of the information provided by [the two reports of treating physicians] appears to

10

be cumulative of evidence already included in the administrative record, other information is not[;] . . . [b]oth of these reports appear to shed light on the severity of plaintiff's mental illness and should be considered, along with other information in the administrative record, to determine what impact these evaluations may have on plaintiff's claim of disability"); *Stadler*, 464 F. Supp. 2d at 188 ("the Appeals Council erred by failing to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination") (internal quotation and brackets omitted).

That the Appeals Council erred in this respect does not, of course, mean that Dr. Napoli's opinion must be given controlling weight or that Brown is entitled to benefits on remand. Those are separate determinations.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Brown's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                *s/Marian W. Payson*
                MARIAN W. PAYSON
                United States Magistrate Judge

Dated: Rochester, New York
       June 12, 2019